IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**L.R., a minor, by his guardian/
grandmother, G.R.,**

        **Plaintiff**

        v.

**STEELTON-HIGHSPIRE
SCHOOL DISTRICT,**

        **Defendant**

: 
: 
: 
: 1:10-CV-00468
: 
: Judge Sylvia H. Rambo
: 
: 
: 
: 
: 

# M E M O R A N D U M

On March 29, 2010, the court issued a preliminary injunction, (Doc. 21), after a hearing, requiring Defendant Steelton-Highspire School District ("the District") to immediately re-enroll Plaintiff, L.R., a minor, in the Steelton-Highspire Junior High School as his pendent school placement and maintain his enrollment in the District pending full resolution of this dispute in accordance with 42 U.S.C. § 11432(g)(3)(E)(i) of the McKinney-Vento Homeless Education Assistance Improvements Act of 2001, 42 U.S.C. §§ 11431-11435 ("McKinney-Vento Act" or "the Act"). This memorandum sets out the court's reasoning and supports its issuance of the injunction.

## I.     Background
###     A.     Facts

Plaintiff L.R. is a 13-year old child of compulsory school age pursuant to 24 P.S. §§ 13-1326 and 13-1327(a). (Stipulation, Doc. 22, ¶ 1.) The District is a Local Educational Agency within the meaning of the McKinney-Vento Act. (*Id.* ¶

2.) Plaintiff was enrolled in the District by his grandmother, G.R., in 2003. (*Id.* ¶ 3.) G.R. testified that she is the educational decision maker for L.R., this includes implementing L.R.'s individualized education plan ("IEP"). Furthermore, Plaintiff's mother has never played a role in either raising him or in his education. Finally, Scott Kuren, the Coordinator of Pupil Services at the District confirmed that L.R. was enrolled by G.R., and that G.R. was the adult responsible for his educational decisions.

On January 27, 2009, the home where L.R. and G.R. lived in Steelton was destroyed by fire, rendering them homeless and displaced. (*Id.* ¶ 4.) As a result of their displacement, G.R. and L.R. moved to live temporarily with relatives in Harrisburg. (*Id.* ¶ 5.) The house that Plaintiffs moved to is leased by G.R.'s daughter—Plaintiff's aunt—and, in addition to G.R. and L.R., there are four other persons living there. G.R. testified that she and L.R. share a bedroom, and that they must live by the rules of the house, including a rule that they are not allowed to go to the lower level of the house after bedtime. G.R. testified that, despite the fact that she and L.R. have been residing there since January 2009, they are there temporarily and at the mercy of her daughter. G.R. intends to move back to Steelton as soon as she is able to do so. She testified that she earns $800 per month from employment with Goodwill Industries, but that she is trying to save money to move. She also testified that she is on the priority list for subsidized housing through the Dauphin County Housing Authority and hopes to be permanently housed back in the District soon.

Beginning in January 2009 continuing until June 2009, the District recognized L.R. as homeless pursuant to the McKinney-Vento Act, and provided

2

transportation to the District from the house where L.R. lives in Harrisburg. (*Id.* ¶ 6.) However, in August 2009, continuing through the present, the District refused to enroll L.R. in its schools. (*Id.* ¶ 8.) G.R testified that she spoke with Kuren in August of 2009, when she inquired with him why she did not get any papers arranging L.R.'s transportation for the 2009-2010 school year. According to G.R., Kuren told her that L.R. was taken off the register in June of 2009 because they no longer lived in the District, and that she should try enrolling L.R. in the Harrisburg School District. For his part, Scott Kuren testified that he made the decision not to enroll L.R. in the District in August 2009 because he learned that G.R. and L.R. continued to reside in the same home with relatives in Harrisburg, and that L.R.'s mother lived down the street from them. Based on this information, Kuren stated that he concluded that L.R. was no longer homeless, and since he was not a resident of the District, that he should not be enrolled for the 2009-2010 school year. Both G.R. and Kuren testified that Kuren never notified G.R. in writing of his decision not to enroll L.R., and did not tell her that she could appeal that decision.

      After L.R. was refused enrollment in the District, G.R. tried to enroll him in the Harrisburg School District but it would not accept him either. G.R. then contacted L.R.'s juvenile probation officer Danatia Baker, and L.R.'s caseworker from the Dauphin County Case Management Unit, Brienne Long. Both Ms. Baker and Ms. Long testified at the hearing that they attempted to intervene with the District, but that they too were unsuccessful in getting the District to enroll L.R. Eventually, through the intervention of the Capital Area Intermediate Unit, and a regional coordinator who supervises local school district's homeless liaisons, the

3

Harrisburg School District was instructed to enroll L.R. This determination was made in February 2010.

Despite his enrollment in Harrisburg, G.R. testified at the hearing that she wants L.R. to be enrolled in the District because she believes that this is in his best interests. The District has a long history of working with his disabilities and have implemented his IEP. In contrast, G.R. testified that the Harrisburg School District has yet to have an IEP meeting and she is uncertain when such a meeting will take place. While there was some testimony from the District's special education coordinator Cynthia Sell that the Harrisburg School District may be better equipped to handle L.R.'s special education needs, this information was generalized and not particular. For instance, Ms. Sell could not say for certain whether L.R.'s IEP was transferred from the District to the Harrisburg School District only that this was routinely done. Furthermore, Ms. Sell had no personal knowledge of the type of services, if any, that L.R. was receiving in the Harrisburg School District.

G.R. also testified that she intends to move back to the District as soon as her name comes up on the priority housing list, and that L.R. has not adjusted well to the transition to Harrisburg. She testified that she desires to have L.R. in the District's schools for the sake of continuity and stability of his education and his social relationships.

### B. Procedural Background

G.R. commenced this case on behalf of L.R. by filing a complaint on March 2, 2010, along with an Emergency Motion for Preliminary Injunction and brief in support (Docs. 1, 3-4.) The court originally scheduled a hearing for March 17, 2010, but rescheduled the hearing at Plaintiff's request by order dated March 12,

2010. (Doc. 12.) On March 24, 2010, Defendant filed its brief in opposition. (Doc. 15.) A hearing was held on March 29, 2010, and the court issued an order that same day granting Plaintiff's motion. (Doc. 21.) This memorandum sets forth the court's reasoning in support of its March 29, 2010 order.

**II.        Discussion**

Under the McKinney-Vento Act, the District—a local education agency ("LEA")—is required to continue a homeless child's education in the school of origin ("home school") for the duration of homelessness, or enroll the child in the appropriate public school within the attendance area of the student's temporary housing ("local school"). 42 U.S.C. § 11432(g)(3)(A)(i),(ii). The Act defines homeless children and youths, in relevant part, as:

> (A) [I]ndividuals who lack a fixed, regular, and adequate nighttime residence . . . and
>
> (B) includes —
>
>   (i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardships, or a similar reason; are living in motels, hotels, trailer parks, or camp grounds due to a lack of alternative adequate accommodations; are living in emergency or traditional shelters; are abandoned in hospitals; or are awaiting foster care placement.

42 U.S.C. § 11434a(2)(A),(B)(i).

Where a homeless child attends school is to be determined based on his or her best interest, which requires "to the extent feasible, keep[ing] a homeless child or youth in the school of origin, except when doing so is contrary to the wishes of the child's or youth's parent or guardian." *Id.* at § 11432(g)(3)(B)(i). Furthermore, when a dispute arises over school enrollment, the McKinney-Vento Act requires that

the child be "immediately admitted to the school in which enrollment is sought, pending resolution of the dispute." *Id.* at § 11432(g)(3)(E)(i). This provision is known as the pendency provision. Additionally, in the case of a dispute, the Act requires an LEA to provide "a written explanation of the school's decision regarding school selection or enrollment, including the rights of the parent, guardian, or youth to appeal the decision." *Id.* at § 11432(g)(3)(E)(ii).

Plaintiff argues that the McKinney-Vento Act's pendency provision operates as an automatic preliminary injunction, and should be enforced as an absolute rule in lieu of the more rigorous preliminary injunction factors. In so doing, Plaintiff analogies the stay-put provisions of the IDEA which other courts have found to operate as automatic injunctions. *See e.g., Ringwood Bd. of Educ. v. K.H.J. ex rel. K.F.J.*, 469 F.Supp.2d 267, 269 (D.N.J. 2006) (finding that Section 1415(e)(3) of the IDEA functions as an automatic preliminary injunction.) The court finds it unnecessary to decide whether the Act's pendency provision operates as an automatic injunction because court determines that Plaintiff has presented sufficient evidence to overcome the more taxing traditional preliminary injunction standards.

In determining whether a preliminary injunction should issue, a court must consider (1) the extent to which the moving party will suffer irreparable harm without injunctive relief; (2) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; (3) the likelihood that the moving party will succeed on the merits; and (4) the public interest. *McNeil Nutritionals, L.L.C. v. Heartland Sweeteners, L.L.C.,* 511 F.3d 350, 356-57 (3d Cir. 2007); *see also U.S. v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003). An analysis of each of these factors supports granting the preliminary injunction.

### A. Irreparable Harm to Plaintiff versus harm to Defendant

To establish irreparable harm, plaintiffs must demonstrate "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)). The harm alleged must be of "a peculiar nature, so that compensation in money cannot atone for it." *Buck*, 485 F.Supp.2d at 586. Pennsylvania state courts have recognized, "deprivation of educational rights can produce irreparable harm and establishes a need for prompt and immediate relief." *Oravetz v. West Allegheny Sch. Dist.*, 74 Pa. D. & C. 2d 733, 737-38 (1975). "Absence from school cannot be repaired by money damages or even by a subsequent reinstatement at a future period." *Minnicks v. McKeesport Area Sch. Dist.*, 74 Pa. D. & C.2d 744, 749-50 (1975). Federal courts have similarly held in the context of special education cases that even though compensatory education may be available, monetary compensation "can never atone for deprivation of a meaningful education in an appropriate manner at the appropriate time." *John T. ex rel. Paul T. v. Com. of Pa.*, No. Civ. A. 98-5781, 2000 WL 558582, at *8 (E.D. Pa. May 08, 2000) (finding irreparable harm where child could only make meaningful progress at a particular school).

Here, L.R., will suffer irreparable harm if he is not re-enrolled in the District. Because of the District's mishandling of this matter, L.R. missed over five months of school. Although this would trouble the court under ordinary circumstances, it is even more troubling because L.R. is a student with a disability whose needs were met in the District over a period of years. Based on the testimony presented at the hearing, the District has continuously implemented L.R.'s IEP since

he was first identified as being eligible for special education services when he was in kindergarten. In contrast, G.R. testified that in the two months that L.R. has been in Harrisburg no IEP meeting has been held to determine how that district will implement L.R.'s IEP.

The District has in-depth knowledge of L.R., his needs, his learning style, and is best positioned to meet L.R.'s special needs as evidenced by the fact that it has been doing so for a number of years. Furthermore, G.R. was unequivocal about her intentions of returning to the District once she is able to be permanently housed. To permit L.R. to remain in the Harrisburg School District only to eventually have him transferred back to the District once he and his grandmother are permanently housed has the very real potential to significantly and irreparably harm L.R.'s educational prospects, and would be completely contrary to the Act's express purpose of continuity of education for homeless students. Accordingly, the court finds that Plaintiff has produced sufficient evidence of irreparable harm to L.R. if he is not immediately re-enrolled in the District.

In contrast, the District presented no evidence that it would be harmed by immediate re-enrollment of L.R. At the hearing, counsel for the District argued that the court would be setting dangerous precedent if it ordered L.R. to be re-enrolled because it would encourage individuals to voluntarily abandon the District and yet insist on being educated by the District. This argument seems farfetched and more importantly bears no relationship to the facts of this case. L.R. was displaced from his home by fire not by his or his grandmother's own volition. Furthermore, the home where L.R. is residing temporarily is at most ten miles from the District,

thus making the cost of his transportation an insignificant factor in the determination. As such, the court concludes that the impact to the District is minimal.

### B. <u>Likelihood of Success on the Merits</u>

In order to obtain a preliminary injunction under a standard analysis, a moving party must demonstrate "the reasonable probability of eventual success in the litigation." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir.1989). In this case, Plaintiff has met this threshold.

Based on the testimony at the hearing, L.R. qualifies as a homeless student because he lacks a "fixed, regular, and adequate nighttime residence," 42 U.S.C.§ 11434a(2)(A), and he is "sharing the housing of other persons due to loss of housing, economic hardship or a similar reason," 42 U.S.C. § 11434a(2)(B)(i). The District recognized him as a homeless student from January 2009 through June 2009. His situation has not changed since then. At the hearing, Scott Kuren testified that he determined that L.R. was not homeless based only on the fact that his situation had not changed—therefore, according to Kuren, he must have had an adequate, fixed, nighttime residence—and the fact that his mother had been released from prison and was residing down the street from L.R. Neither of these is material. First, the Act makes it clear that there is no maximum duration of homelessness. Instead, an LEA must accommodate a homeless child for the entire time that they are homeless. *See* 42 U.S.C. § 11432(3)(A)(i). The District recognized L.R.'s situation from January 2009 through June 2009 then arbitrarily decided that he was no longer homeless despite no change in his circumstances. Second, it is immaterial that L.R.'s mother lived down the street from L.R. in

9

Harrisburg. The testimony at the hearing demonstrated that L.R.'s mother played no role in his education.

Furthermore, under the Act's definition of best interest, the District was obligated to ensure continued enrollment at L.R.'s school of origin if feasible unless it was against the wishes of the family. See 42 U.S.C. §§ 11432(g)(3)(A), 11432(g)(3)(B)(i). The District is L.R.'s school of origin under the McKinney-Vento Act. See § 42 U.S.C. §11432(g)(3)(G) (defining "school or origin" as the school the child most recently attended or the school the child attended when permanently housed.)

In contravention of these statutory obligations, the District, without assessment or explanation, and without apprising the family of its rights under the Act, denied L.R. enrollment in the District. It is clear that the intent of the McKinney-Vento Act is that a homeless child not suffer while a school district determines whether he or she is properly enrolled, and instead requires an LEA to immediately admit the student pending the proper termination. *See* 42 U.S.C. § 11432(g)(3)(E)(i). This is what should have happened in this case.

When G.R. presented L.R. for enrollment to the District in August 2009, he should have been admitted without question. The District argues that its obligation to enroll L.R. under this provision only existed if he were homeless, and since it determined that he was no longer homeless it did not have to enroll him. This argument misses the point. Both the text of the Act and the Department of Education's implementing regulations make it clear that in the event of a dispute over whether enrollment is proper, the LEA must immediately enroll the child in the

school in which the parent or guardian seeks enrollment.  *See id.*; *see also,* 67 Fed. Reg. 46 III(B)(3) (Mar. 8, 2002).

Accordingly, the court finds that Plaintiff has produced sufficient evidence demonstrating the likelihood of proving that the District violated 42 U.S.C. §11432(g)(3)(C)(i) (refusal to enroll Plaintiff in August of 2009 when L.R. presented for re-enrollment as a homeless student and failed to conduct a best interest determination); 42 U.S.C. §11432(g)(3)(E)(i) (by failing to immediately enroll L.R. during the pendency of the enrollment dispute); and 42 U.S.C. §11432(g)(3)(E)(ii) (by failing to give a written explanation of its decision regarding enrollment and to advise the family of their right to appeal the District's decision).

### C. Public Interest

The District's decision not to enroll L.R. is in direct conflict with the express requirements of the McKinney-Vento Act which grants special rights and protections to children experiencing homelessness in order to ensure school stability and academic success.  Congress has determined through its enactment of the McKinney-Vento Act that homeless children are particularly vulnerable to falling through the cracks of a fractured local educational system.  As such, in the event of a dispute about whether enrollment is proper they are to be immediately enrolled in the school of choice pending a determination on the merits of their school selection.  *See* 42 U.S.C. § 11432(g)(3)(E)(i).  The court can think of no more clear expression of the public interest than statutory language, and no better way to effectuate that interest than by directing the District to immediately re-enroll L.R.

**III.     Conclusion**

For the reasons set forth above, the court issued an order (Doc. 21) granting Plaintiff's emergency motion for preliminary injunction.


                                              s/Sylvia H. Rambo
                                              United States District Judge

Dated: April 7, 2010.